# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Crim. No. 17-143 (JRT/BRT) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION** |
| MATTHEW DOUGLAS STEELE, | |
| Defendant. | |

Katharine T. Buzicky, **UNITED STATES' ATTORNEY'S OFFICE**, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for plaintiff.

Reynaldo A. Aligada, Jr., **OFFICE OF THE FEDERAL DEFENDER**, 300 South Fourth Street, Suite 107, Minneapolis, MN 55415, for defendant.

On February 6, 2017, Special Agents Booth and Giguere of the Minnesota Bureau of Criminal Apprehension ("BCA") interrogated Defendant Matthew Douglas Steele in a police van while executing a search warrant at Steele's home. During that interview, Steele made incriminating statements. He was subsequently charged with child-pornography offenses based in part on evidence discovered as a result of his incriminating statements. Steele filed a pretrial motion to suppress those statements. Steele argued that the interview constituted a custodial interrogation, thus his statements could not be used against him at trial because he was not informed of his constitutional rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). (Mot. to Suppress at 1-2, July 12, 2017, Docket No. 26.)

United States Magistrate Judge Becky Thorson issued a Report and Recommendation ("R&R") that the Court deny Steele's motion. (R&R at 15, Sept. 20, 2017, Docket No. 43.) The Magistrate Judge considered the totality of the circumstances surrounding Steele's interrogation and found that the interrogation was "custodial." (*Id.* at 14.) Steele timely objected to the R&R on the grounds that the Magistrate Judge improperly applied the factors articulated in *United States v. Griffin*, 922 F.2d 1343 (8th Cir. 1990). (Def.'s Objs. to R&R ("Objs.") at 1-2, Sept. 29, 2017, Docket No. 44.) Because Steele was not in custody during the interrogation, the Court will overrule Steele's objections, adopt the R&R, and deny Steele's motion.

## BACKGROUND

Shortly after 7:00 a.m. on February 6, 2017, approximately eleven law-enforcement officers executed a search warrant at Steele's home. (R&R at 2.) The BCA officers were wearing raid vests that said "Police" and entered with weapons drawn. (*Id.* at 2-3.) They holstered their weapons and removed their vests shortly after entering the home. (*Id.*) The Ramsey County officers wore their official uniforms. (*Id.* at 3.) Two of the officers located Steele in his bedroom. (*Id.* at 3.) They pushed the door open. (*Id.*) When Steele tried to shut the door, an officer put his foot out to stop the door, and the officer's foot went through the hollow door. (*Id.*) Special Agent Booth told Steele that they had a search warrant and asked Steele if she could talk to him outside. (*Id.*) Steele agreed. (*Id.*) Officers let Steele get dressed and use the bathroom while an officer observed him. (*Id.*) They also ensured that Steele had a coat on and allowed him to get

something to drink.  (*Id.*)  Special Agents Booth and Giguere then went outside with Steele and interviewed him in Booth's minivan.  (*Id.* at 3-4.)

Steele and Special Agent Booth sat in the back seat of the minivan; Special Agent Giguere sat up front.  (*Id.* at 4.)  The minivan's doors remained unlocked throughout the interview.  (*Id.*)  Special Agent Booth began the interview by stating that Steele was not under arrest, that he was free to leave, and that he did not have to talk to her.  (*Id.* at 4-5.)  Special Agent Booth asked Steele if he was "willing to have a conversation with [her]," and Steele responded, "Sure."  (*Id.* at 5.)  During the interview, the agents stated that they were confident their search would yield incriminating evidence against Steele.  (*Id.* at 11.)  Special Agent Booth said that Steele had "time hanging over his head" because Steele was on probation.  (*Id.*)  She also told Steele that someone who continues to lie "tells [her] there's something darker in [his] soul."  (*Id.* (second alteration added).)  At the end of the interview, Steele acknowledged that Special Agent Booth had told him that he was not under arrest; that the agents had not threatened, coerced, or promised him anything; and that he understood that he was free to leave.  (*Id.* at 5-6.)  Shortly after the interview and after a discussion with Steele's probation officer and Special Agent Booth's supervisor, Steele was arrested.  (*Id.* at 6.)

## DISCUSSION

### I.   STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 636(b)(1)(B), the Court may refer a motion to suppress statements in a criminal case to a magistrate judge for proposed findings of fact and

recommendations. A motion to suppress statements is a dispositive motion. *United States v. Jaunich*, No. 13-183, 2014 WL 1026331, at *7 (D. Minn. Mar. 14, 2014). Upon the filing of a report and recommendation by a magistrate judge, "a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2); *accord* D. Minn. LR 72.2(b)(1). "The objections should specify the portions of the magistrate judge's report and recommendation to which objections are made and provide a basis for those objections." *Mayer v. Walvatne*, No. 07-1958, 2008 WL 4527774, at *2 (D. Minn. Sept. 28, 2008). For a dispositive matter, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *accord* D. Minn. LR 72.2(b)(3). "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); *accord* D. Minn. LR 72.2(b)(3).

## II.     STEELE'S MOTION TO SUPPRESS

Statements made to law enforcement officials in a custodial interrogation are inadmissible in court unless the defendant is informed of his constitutional right to remain silent and to be represented by counsel during questioning. *Miranda*, 384 U.S. at 467-70. Government agents need only administer *Miranda* warnings when a person has been taken into custody and is subjected to questioning rising to the level of an interrogation. *Stansbury v. California*, 511 U.S. 318, 322 (1994). The parties agree that Steele was interrogated but dispute whether he was in custody.

A defendant is in custody for *Miranda* purposes if a reasonable person in the defendant's position "would consider his freedom of movement restricted to the degree associated with formal arrest." *United States v. Huether*, 673 F.3d 789, 794 (8th Cir. 2012); *see also United States v. Aldridge*, 664 F.3d 705, 711 (8th Cir. 2011). The Eighth Circuit has identified six factors relevant to the custody inquiry:

> (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; or, (6) whether the suspect was placed under arrest at the termination of the questioning.

*Griffin*, 922 F.2d at 1349. These factors are not exclusive and need not "be followed ritualistically in every *Miranda* case." *United States v. Czichray*, 378 F.3d 822, 827 (8th Cir. 2004). Ultimately, the Court must consider the totality of the circumstances surrounding the interrogation. *United States v. Sanchez*, 676 F.3d 627, 630 (8th Cir. 2012). The ultimate question is "whether a reasonable person in that position would have felt free to end the interview." *Id.* at 630-31.

Steele objects to the R&R on the grounds that the Magistrate Judge misapplied each of the *Griffin* factors. The Court will consider each of Steele's objections in turn.

Steele claims that, in analyzing the agents' statements that he was free to leave, the Magistrate Judge failed to consider the impact of the surrounding circumstances on

Steele's perception of those statements. (Objs. at 2-3.) Repeated assurances that a suspect is free to leave are "powerful evidence that a reasonable person would have understood that he was free to terminate the interview." *Czichray*, 378 F.3d at 826. Neither the Eighth Circuit nor the Supreme Court has held that a person was in custody after being "clearly advised of his freedom to leave or terminate questioning." *United States v. Giboney*, 863 F.3d 1022, 1028 (8th Cir. 2017) (quoting *Czichray*, 378 F.3d at 826). Because Steele was told before and after his interview that he was free to leave, this factor suggests that Steele was not in custody.[1]

Steele claims that, in analyzing whether his freedom of movement was restrained, the Magistrate Judge failed to consider that he was on probation. (Objs. at 3-4.) Courts considering the "unrestrained movement" factor focus on physical restraint. *See Giboney*, 863 F.3d at 1028; *United States v. Williams*, 760 F.3d 811, 815 (8th Cir. 2014). The agents "did not restrain [Steele] or brandish weapons at him when they asked him to leave his residence or when they were seated in the minivan talking." (R&R at 10.) The doors of the minivan remained unlocked throughout the interrogation. (*Id.* at 4.) While there were other unmarked police vehicles and agents in the area, there is no evidence that anyone was blocking Steele's exit from the vehicle. (*See id.*) Moreover, as Steele

---

[1] While Steele claims that the surrounding circumstances belied the agents' statements, the Magistrate Judge considered all of these circumstances elsewhere in the R&R. The first *Griffin* factor only asks the Court to ascertain whether the agents advised Steele of his freedom; the remainder of the "totality of the circumstances" test affords an opportunity to evaluate whether those advisories were effective. *See United States v. Ollie*, 442 F.3d 1135, 1138 (8th Cir. 2006) ("[A]n explicit assertion that the person may end the encounter is stronger medicine. Such a statement provides an individual with a clear understanding of his or her rights and generally removes any custodial trappings from the questioning.").

concedes, the Magistrate Judge analyzed the impact of Steele's probationer status elsewhere in the R&R. (*Id.* at 11.) Because Steele was not physically restrained before, during, or immediately after the interrogation, the second *Griffin* factor weighs against a custody finding.

Steele claims that the Magistrate Judge failed to consider that Steele did not initiate contact with law enforcement. (Objs. at 4-5.) *Griffin* advises courts to consider "whether the suspect initiated contact with authorities **or** voluntarily acquiesced to official requests to respond to questions." *Griffin*, 922 F.2d at 1349 (emphasis added). The disjunctive "or" suggests that voluntary acquiescence and suspect-initiated contact each independently satisfy this factor. *See Giboney*, 863 F.3d at 1028. Because Steele does not dispute that he voluntary acquiesced to the interview, this factor suggests that he was not in custody.

Steele claims that, in analyzing whether the agents used coercive tactics in the interrogation, the Magistrate Judge erred by (1) failing to consider Steele's probationer status and (2) improperly focusing on Steele's failure to ask for a break or access to an attorney. (Objs. at 5-6.) Steele cites no cases in which the defendant's probationer status aggravated the effects of coercive tactics. In *Ollie*, the Eighth Circuit held that a reasonable person in the defendant parolee's position would have feared punishment for ending his interview. *Ollie*, 442 F.3d at 1139-40. But there, the interview took place at a police station and the defendant's parole officer ordered him to speak to police. *Id.* at 1138-39. Furthermore, the Eighth Circuit found that the officer's coercive statement falsely implying that the defendant's fingerprints had been found on a gun did not affect

the custody determination because such deceit "would not have acted to prevent a reasonable person from terminating the interview." *Id*. at 1139. Thus, to the extent that Steele's status as a probationer made any of the officers' statements feel more coercive, such coercion was insufficient to make the circumstances custodial.

In *United States v. Aldridge*, a defendant's fear of probation revocation was not sufficiently reasonable to support a custody finding because his probation officer said only that she would initiate an investigation if he refused to speak to police. 664 F.3d 705, 711-12 (8th Cir. 2011). The defendant there could not reasonably fear revocation, the court reasoned, "unless he believed an investigation would uncover probation violations." *Id.* at 712. Here, Steele's probation officer was not involved until after the interview, and there is insufficient evidence that the agents used Steele's probation status to compel him to continue the interview. The agents' statements suggested only that they had evidence of probation violations and that such violations could lead to a jail or prison sentence. Steele's probationer status did not aggravate the impact of the agents' interrogation tactics.

Any coercive tactics the agents employed were not improper. Some coercion is inevitable in any police interrogation, and these tactics are relevant only to the extent a reasonable person would perceive them as "restricting his or her freedom to depart." *United States v. LeBrun*, 363 F.3d 715, 721 (8th Cir. 2004). Officer assertions regarding a defendant's guilt do not rise to the level of strong arm tactics. *See Sanchez*, 676 F.3d at 631 (raising voice and accusing defendant of lying are not coercive interview tactics).

The agents here did not raise their voices or threaten Steele. They merely stated their confidence that they would uncover evidence of criminal activity, that the evidence would lead to prison time, and that lying showed "something darker in [Steele's] soul." (R&R at 11.) A reasonable person would not perceive these statements as restricting his freedom to leave. Steele did not ask for a break or an attorney, but the Court would reach the same conclusion irrespective of Steele's inaction.

Steele claims that, in deciding whether the atmosphere was police dominated, the Magistrate Judge failed to consider the events leading up to the interrogation. (Objs. at 7.) The execution of a search warrant is inherently police dominated. In *United States v. Perrin*, six officers in tactical gear entered the defendant's home to execute a search warrant for child pornography. 659 F.3d 718, 721 (8th Cir. 2011). Despite this police-dominate atmosphere, the Eighth Circuit found that the defendant was not in custody because agents there told Perrin that he was free to leave, told him that he did not have to answer the agents' questions, and did not threaten Perrin or promise him anything. *Id.* at 720-21. Moreover, the agent in *Perrin* took the defendant to a separate room, closed the door almost all the way, and had his weapon holstered but visible during the questioning. *Id.* at 720. Given the similarity of this case to *Perrin*, the police-dominated atmosphere in this case "does not tip the scale" in favor of custody. (R&R at 13.)[2]

Finally, Steele claims that his subsequent arrest weighs in favor of a custody finding because there was no doubt Special Agent Booth would arrest him after the

---

[2] The Magistrate Judge elsewhere analyzed Steele's initial contacts with law enforcement. (R&R at 10-11.)

interview. (Objs. at 8-9.) Arrests that follow interrogations do not automatically lead to a custody finding. *See Huether*, 673 F.3d at 794-95; *United States v. Brave Heart*, 397 F.3d 1035, 1039-40 (8th Cir. 2005). That Special Agent Booth reminded Steele he was not under arrest at the end of the interview is "powerful evidence" that he was not in custody until after the consultation with Steele's probation officer. *See Czichray*, 378 F.3d at 826. Although the final *Griffin* factor weighs in Steele's favor, the arrest does not indicate he was in custody during the interrogation. *See Brave Heart*, 397 F.3d at 1039 (intent to arrest never communicated to defendant).

Steele was informed of his right to leave, had unrestrained freedom of movement, voluntarily acquiesced to questioning, and was not subjected to improper coercive or deceptive tactics. Given the totality of the circumstances, the police-dominated atmosphere and Steele's subsequent arrest are insufficient to support a finding of custody. Although Steele's case would be a closer call if the Court were writing on a blank slate, Eighth Circuit law – and *Perrin* in particular – requires that the Court deny Steele's motion.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, the Court **OVERRULES** Defendants Objections [Docket No. 44], and **ADOPTS** the Report and Recommendation of the Magistrate Judge [Docket No. 43].

Accordingly, **IT IS HEREBY ORDERED** that Defendant's Pretrial Motion to Suppress Statements [Docket No. 26] is **DENIED**.

DATED:  November 21, 2017                              _____s/John R. Tunheim_____
at Minneapolis, Minnesota.                                        JOHN R. TUNHEIM
                                                                                  Chief Judge
                                                                     United States District Court